David K. SMITHEY, Appellant,

v.

The STATE of Texas, State.

No. 2–91–386–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 16, 1993.

Publication Ordered March 30, 1993.

Rehearing Overruled March 30, 1993.

---

Robert Ford, Fort Worth, for appellant.

Tim Curry, Steven W. Conder, Leslie Hardy, Crim. Dist. Attys., Fort Worth, for the State.

Before LATTIMORE, DAY and ASHWORTH (Retired), JJ., Sitting by Assignment.

## OPINION

ASHWORTH, Justice (Retired).

A jury found appellant guilty of driving while intoxicated. The trial court set his punishment at a fine of three hundred and fifty dollars and ninety days jail confinement, probated for two years.

We reverse and remand.

Appellant's one point of error contends the trial court erred in refusing to charge the jury on the validity of the observation period that is required by law as a predicate to admission of an intoxilyzer test.

Appellant was stopped by an Arlington police officer in the early morning hours for speeding. The officer concluded appellant was intoxicated from his manner of speech, appearance and conduct and arrested him. Appellant was taken to the Arlington Police Department, and was given a statutory police warning at 2:06 a.m. The intoxilyzer record shows observation of appellant began at 2:04 a.m. At some time during the observation period it was determined that appellant had tobacco in his mouth, he spit it out and the observation continued. Through expert testimony, the State showed the intoxilyzer determined appellant had a breath alcohol concentration of .17 grams of alcohol per 210 liters of breath.

■ It is undisputed that a fifteen minute observation period must be made in order for a proper breath intoxilyzer test to be made. Appellant contends a fact question was presented with regard to the observation period and that it was error to fail to give his requested instruction:

You are instructed that before you may consider the results of any breath test or chemical test, you must find beyond a reasonable doubt that the regulation [sic] of the Department of Public Safety were complied with and that the methods were used.

The regulations of Department of Public Safety include:

1) A continuous observation period of fifteen minutes during which the subject of the test did not eat, smoke, vomit or otherwise introduce any substance into his mouth;

2) Checking the reference sample devise [sic] to assume that it is properly sealed;

3) Maintaining the breath tube inside the housing until the subject test.

If you have found beyond a reasonable doubt that all of these were complied with then you may consider said test in your deliberations. If you do not find or if you have a reasonable doubt as to the compliance then you may not consider said test for any purpose and shall not consider if [sic] whatsoever in arriving at your verdict.

We examine the record with regard to testimony concerning the observation period and find the following:

Russell Trask, Detention Officer and Intoxilyzer Operator:

[PROSECUTOR:]

Q. Okay. Are you familiar with the regulations of the Breath/Alcohol Testing Program which are promulgated and published by the Texas Department of Public Safety?

A. Yes ma'am.

Q. Okay. Are you familiar with the required methodology for conducting a breath test using those regulations?

A. Yes ma'am.

Q. Is that methodology, in fact, printed on the intoxilyzer instrument that you conduct—used to take the test in this case?

A. Yes ma'am.

Q. Did you in every regard follow the required methodology in administering the breath test to Mr. Smithey on September 17th, 1989?

A. Yes, I did.

Q. Did you observe the Defendant continuously for at least fifteen minutes immediately preceding the actual administration of the test?

A. Yes ma'am, I did.

Q. For what purpose do you observe the Defendant before giving the test?

A. To make sure they don't insert anything in their mouth such as gum or tobacco, or they do not belch or vomit while in my presence, that could affect the test.

Q. Okay. Was in this case, Mr. Smithey's case, the observation period longer than fifteen minutes?

A. Yes ma'am, it was.

Q. And why was that?

A. During the video tape he had tobacco in his mouth. I had him take the tobacco out. He spit it out and then we observed him after that.

Q. Okay. Did he at any time ingest any alcoholic beverage or other fluid during this observation period?

A. No ma'am.

Q. Did you see him regurgitate?

A. No ma'am, I did not.

Q. Smoke?

A. No.

Q. Eat?

A. No.

Q. Did he place anything into his mouth that might have contained alcohol?

A. No ma'am.

. . . .

[DEFENSE ATTORNEY:]

Q. Okay. Do you remember you said on the video tape he had tobacco in his mouth?

A. Yes sir.

Q. And when did the video tape start?

A. I do not know the exact time, sir.

Q. Can you give us a rough idea?

A. Approximately two o'clock.

Q. Could it have been around two o four?

A. Could be, yes sir.

Q. Okay. Now, is it my understanding that the regulations say that you can't test somebody if they've got tobacco or anything in their mouth, right?

A. Yes sir.

Q. Okay. You say he had to spit it out after the video tape?

A. No sir. He spit it during the video tape.

Q. Okay. And what time did you start your observation period from?

A. I'd have to look at the statement. I don't know the exact time.

[DEFENSE ATTORNEY]: Your Honor, may I approach the witness?

THE COURT: Yes.

[DEFENSE ATTORNEY]: (CONTINUING)

Q. I think you've seen this before. You say on this one it says two o four. I guess we'll find out if that's when the video started. So, did you—now since he had tobacco in his mouth when it started, that wasn't a valid period, was it?

A. No sir.

Q. Okay.

A. That's why there is thirty minutes.

Q. Well, when did you start it again?

A. Started at the beginning of what?

Q. Start the true observation period?

A. More than likely just upon completion of his spitting the tobacco out. I do

not know the specifics. I do not remember the specifics.

Q. In any case, two o four would not be correct if that was the start of the video tape? Right?

A. If that was the start of it, yes sir.

Q. Okay. Let me see. Were you there when the—when this form was read to him?

A. Yes sir, I was.

Q. Okay. And was this form read to him on the video tape?

A. Yes sir, it was.

Q. Okay. Well, this form which has been admitted into evidence says two o six.

A. Yes sir.

Q. Do you know if it was before or after that?

A. It was after that.

Q. Okay. So the two o six would not be a correct observation period?

A. no [sic] sir.

Q. Okay. So you say you are familiar with the regulations?

A. Yes sir.

Q. Okay. I've got the part of the regulations here that says, continuous observation of the subject during which period the subject must not ingest any alcohol beverages or other foods, regurgitated, vomited, eaten, or smoked. And you interpret that as, basically, having anything in his mouth?

A. Right.

Q. Okay. And if it's after two o six, and your observation period runs from two o four, then clearly your observation period is not in compliance with the regulations, is it?

A. No sir.

. . . .

Q. Let me just show you what we've got here. Book out date September 17, 1989, four forty.

A. Uh huh.

Q. That is the time he was released from jail?

A. I believe so, yes sir.

Q. Okay. And what time did you give the test?

A. Approximately two thirty.

. . . .

[PROSECUTOR:]

Q. Okay. The time period on State's Exhibit Number Two, is that inclusive from 2:04 A.M. to 2:34 A.M.? That's the entire time that you had the Defendant within your observation, is that correct?

A. Yes ma'am.

Q. During the video, the Defendant takes his dip out and throws it away. What is your normal practice when something like that happens?

A. We start at that time. The fifteen minute observation time would start at that time.

. . . .

Q. Okay. Officer Trask, in Mr. Smithey's case was the fifteen minute observation period adhered to?

A. Yes ma'am.

Q. And during that specific fifteen minutes did the Defendant regurgitate, or belch, or have anything in his mouth, or have anything to drink at all?

A. No ma'am.

Byron Max Courtney, Lab Director and Technical Supervisor:

[PROSECUTOR:]

Q. Okay. Does this test record indicate that an observation period of at least fifteen minutes was conducted prior to the test?

A. Yes.

Q. What's the purpose of the observation period?

A. It's a time the operator is required to observe the subject to make sure that the subject does not eat, drink, smoke, vomit, regurgitate, or introduce any substance into the mouth for at least fifteen minutes prior to the test.

Q. So the observation period reflected if it's more than fifteen minutes wouldn't be invalid, is that correct?

A. That's correct.

Q. Okay. If an operator, based on the way you train the operators and the training that they receive, saw a subject remove an object from his mouth during an observation period and noted that he

watched him for fifteen minutes after that removal, would that be a valid test?

A. Yes.

Q. Okay. Whether or not it is noted on State's Exhibit Number Two?

A. Yes.

. . . .

[DEFENSE ATTORNEY:]

Q. Mr. Courtney, do you have a copy of this exhibit?

A. Yes, I do.

Q. Am I correct in saying that the observation period is listed from 2:04 to 2:34?

A. That's what it shows.

Q. If, during that period of time, the person being tested, in addition to belching, also had some foreign object in his mouth such as tobacco, or a wad of chewing tobacco, would that be a correct observation period?

A. Not if it was within fifteen minutes of the test it wouldn't be.

Q. If it's during the stated observation period is it a correct observation period?

A. I think the better practice would be to void that test record and start a new test record with a new observation time. I think that would be better because then you could say from the time it started to the time it's stopped, there was no—nothing from that list of things that subjects can't do.

Q. Okay. And if the observation period includes a period of time where the subject had a wad of something in his mouth, and in addition to that, perhaps belched. Would you consider that a valid test?

A. Well, if the subject had something in his mouth within fifteen minutes prior to taking the test, I would say that was not a valid test. I don't think that there's enough detailed guidelines in the methods published by the Scientific Director to say that if—let me put it in a hypothetical term. Let's say at 2:00 A.M. the subject begins the observation time. At 2:10 A.M.—the operator does. At 2:10 A.M. the subject takes something out of his mouth. At 2:30 A.M. the test is administered. I don't think I could invalidate that based on the regulations or the methods published by the Scientific Director. I think the better practice would be to void the test record, and start another one at 2:11 A.M.

. . . .

[PROSECUTOR:]

Q. Mr. Courtney, if the video ended at 2:19 and the test reflected that—sorry, the intoxilyzer test record showed the test was given at 2:34, what time period has elapsed?

A. That's fifteen minutes. Maybe minus some seconds.

Q. Okay. And that would fall well within the range of the guidelines that are set out by the State of Texas, is that correct?

A. If it was fifteen minutes, yes.

Q. I'm sorry. I hand you State's Exhibit Number Two. What is the subject's result in this test?

A. Zero point one seven gram of alcohol per two hundred ten liters of breath.

Q. And, in your opinion, is this a correct test?

A. I would have to assume that the test was done according to the proper methods. If that were the case, then I would say, yes, it was a valid and accurate test.

Q. If there has been evidence presented that from 2:19 until 2:34, the Defendant did not eat, drink, belch, regurgitate, or have anything in his mouth at that time, would you say that was a correct observation period?

A. Did he smoke?

Q. No. Didn't smoke either.

[DEFENSE ATTORNEY]: I object to this, your Honor. Because, one, it's comparing testimony and, two, Counsel is testifying.

THE COURT: Sustained.

[PROSECUTOR]: (CONTINUING)

Q. If the observation period was correct for fifteen minutes, then the test would be correct as well?

A. If the observation was correct and correctly done for at least fifteen minutes, then the test would be a valid test.

Q. Okay. Residual alcohol. Have you done studies on that?

A. Yes, I have.

Q. Okay. Chewing tobacco. Dipping scoal [sic]. That kind of stuff. Does it keep alcohol?

A. I suppose it could. It certainly would for some period of time. Whether it would keep it beyond fifteen minutes, it's possible. Certainly there's not supposed to be anything in the mouth for that fifteen minutes.

Q. If the tobacco is removed from the mouth and then observation starts, would there be any residual alcohol?

A. No.

Appellant:

[DEFENSE ATTORNEY:]

Q. You were chewing tobacco at that time?

A. Yes. I had a dip of snuff in.

Q. Okay. And you were still chewing tobacco when you were on the video tape. Right?

A. Yes, I was.

. . . .

[PROSECUTOR:]

Q. Okay. After—during the video tape, Officer—sorry, Mr. Trask asked you if you had anything in your mouth. Or if you had belched or regurgitated. Remember that at the end?

A. Yes, I do.

Q. And you said, yes, that you had belched?

A. Yes.

Q. Okay. And there was an Officer with you until you took the breath test after that, is that correct?

A. What is that again?

Q. There was an Officer with you from the time the video ended until you took the breath test, is that correct?

A. I think right after the video tape I took my breath test.

Q. Okay. You don't remember waiting fifteen minutes?

A. I don't believe I waited fifteen minutes.

Q. Okay. Was there anything in your mouth in between then?

A. The time I was waiting? Or supposed to be waiting? No, I'd already spit everything out.

■ We find this testimony did raise a fact question as to whether an uninterrupted observation period of fifteen minutes was made. We next examine the trial court's charge to determine if it encompassed the requested charge. The pertinent portions of the charge are:

I.

Our law provides that a person commits an offense if that person is intoxicated while driving or operating a motor vehicle in a public place.

(1) "Intoxicated" means:

A. Not having the normal use of mental or physical faculties by reason of the introduction of alcohol into his body; or

B. Having an alcohol concentration of 0.10 or more.

(2) "Alcohol concentration" means the number of grams of alcohol per 210 liters of breath.

(3) "Public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

. . . .

IV.

Now if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 17th day of February, 1989, the defendant, David K. Smithey, while driving or operating a motor vehicle in a public place was intoxicated, to-wit:

That he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, or that he had an alcohol concen-

tration of 0.10 or more, then you will find the defendant guilty as charged.

Unless you do so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, "not guilty".

■ We find the charge given did not encompass the requested instruction, and having determined it was error to fail to give the same, we next consider the effect of such error. It will be remembered that appellant was charged with two means of intoxication: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol into his body; or (B) having an alcohol concentration of 0.10 or more. It is impossible for us to determine which of the methods of intoxication (or both) was found by the jury. The record shows that a greater part of the testimony concerned the breath intoxilyzer test. Additionally, in opening statement the prosecutor stated: "and a intoxication test was taken, and the results of that test was that the Defendant had a point one seven alcohol...." Objection was made and sustained as to the statement but no motion to disregard was made. The jury was initially and improperly informed as to the results of the breath test. We cannot say that the jury did not find appellant guilty by virtue of the breath test.

Essentially, this same question was considered in *Gifford v. State*, 793 S.W.2d 48 (Tex.App.—Dallas 1990), *pet. dism'd*, 810 S.W.2d 225 (Tex.Crim.App.1991). In *Gifford*, the appellant had eaten mexican food prior to his arrest and the State failed to show that he had been continuously observed for fifteen minutes immediately preceding the test. In the instant case, the evidence is even stronger in presenting a fact question that the fifteen minute period was observed. We adopt the finding and authority stated in *Gifford:* Because we cannot determine upon what theory of intoxication appellant was convicted, we cannot hold beyond a reasonable doubt that the trial court's error made no contribution to appellant's conviction. *See Kirby v. State*, 713 S.W.2d 221, 222 (Tex.App.—El Paso 1986, no pet.). Appellant's point of error is sustained.

The judgment is reversed and the cause remanded to the trial court.