**Michael Hughes ATKINSON, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–328–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 26, 1994.

Discretionary Review Granted
May 25, 1994.

Lollar, Phillips, Factor & Blanco, P.C., and Abe Factor, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Assts., Steven W. Conder, Charles Jones, and Michael Klein, Assts., Fort Worth, for appellee.

Before FARRIS, WEAVER and DAY, JJ.

## OPINION

DAY, Justice.

Michael Hughes Atkinson appeals his conviction for driving while intoxicated. TEX. REV.CIV.STAT.ANN. art. 6701/-1(a), (b) (Vernon Supp.1994). After a jury trial, the court assessed punishment at 120 days confinement, probated for two years, and a $500 fine.

We reverse and remand for a new trial.

Atkinson brings two points of error on appeal. In point one, he complains the trial court improperly refused his request to instruct the jury it could consider the intoxilyzer test results only if it found beyond a reasonable doubt the testing officer complied with Department of Public Safety (DPS) regulations. In point two, he complains the trial court improperly admitted the intoxilyzer test results into evidence because the State failed to lay the proper predicate for admission.

Atkinson asked the trial court to include the following instruction in its charge to the jury:

You are instructed that under our law in order to be considered valid, a chemical test must be performed according to the rules and regulations governing such test by the Department of [P]ublic Safety concerning proper techniques and methodology.

Included in those regulations are:

(1) continuous observation of the person tested for a minimum of fifteen (15) minutes prior to the actual test;

(2) operating the reference sample device by blowing through it to see that the bubbling is reduced;

(3) checking the temperature to determine if it is 34 degrees plus or minus 2 degrees;

(4) keeping the breath tube housed inside the machine until the subject is required to give a sample.

If you have found beyond a reasonable doubt that each of these regulations were complied with you may consider such test and give it whatever weight that you choose.

If you do not so find or if you have a reasonable doubt as to whether these regulations were complied with you may not consider said test for any purpose and shall not refer to it further in your deliberations.

The trial court ruled that this instruction impermissibly commented on the weight of the evidence and denied Atkinson's request.

The question of the validity of the intoxilyzer test results comes into play when the defendant raises a fact issue about whether a particular regulation set by the DPS was complied with and requests the suppression of the test or an instruction thereon. *Gifford v. State,* 793 S.W.2d 48 (Tex.App.—Dallas 1990), *pet. dism'd,* 810 S.W.2d 225 (Tex.Crim. App.1991). This court has previously ruled that, if the defendant raises such a fact issue, he is entitled to an instruction like the one Atkinson requested in this case. *Smithey v. State,* 850 S.W.2d 204, 205, 210 (Tex.App.— Fort Worth 1993, pet. ref'd). *See also Gifford,* 793 S.W.2d at 48, 50.

The following evidence about the fifteen-minute observation period is in the record:

*Atkinson's testimony.*

Q [DEFENSE COUNSEL]. Let me ask you if this fellow from Hurst was watching you continuously for 15 minutes?

A. He was there, but he was not watching me continuously, no. He was, you know, opening doors, closing doors and his back was to me. There were several people and both of them were talking and did not even look at me.

. . . .

Q [PROSECUTOR]. And you were placed into a holding tank? They called it a drunk tank, I think you said, and that the officer did not have his eyes on you continuously for 15 minutes?

A. No, sir.

Q. This other officer that testified both Wednesday and yesterday, Officer Saffron, it was your testimony that that officer did not continuously—

A. He was present but he did not continuously watch me.

Q. Now, you realize that if he had continuously watched you that would make a valid test?

. . . .

A. Yes, I heard that during the trial.

**Officer Steve Saffron's testimony.**

Q [DEFENSE COUNSEL]. Let me ask you if during that particular time, how many occasions there were where you might have lost sight of Mr. Atkinson.

A. No significant occasions.

Q. Okay. When you say "significant," are you saying that there were times when you lost sight of him; you just didn't consider them anything significant?

A. I believe there was one time as we were in the videotape room that I may have turned a little bit when I was opening the door to the videotape room.

. . . .

Q. [When walking from the holding cell to the video room,] I'm assuming that you will not—you would not put a prisoner behind you, behind the two of you, Powell and yourself? You wouldn't put the prisoner behind you, would you? That would not be logical, would it?

A. No, sir.

Q. So the prisoner would either be in front of you, which is probably the most common thing, and perhaps between the two of you, would you agree?

A. Yes, sir, or to one side or the other of us.

Q. Okay. But let me see if I've got this right. The time through the door, walking out here and walking down the hall through the door—I assume you have to close the door to the videotape room when you do the videotape; is that correct?

A. Yes, sir.

Q. Okay. Then you have to walk out of this door and go through another door; is that right?

A. Yes.

Q. Am I correct in saying that this is all the time that you counted as continuous observation of this man?

A. Yes, sir.

We find this evidence raises a fact issue about whether Officer Saffron continuously observed Atkinson for fifteen minutes immediately prior to administering the intoxilyzer test.

The record contains the following evidence about operating the reference sample device, checking the reference sample temperature, and maintaining the breath tube inside the housing until the test:

**Officer Saffron's testimony.**

Saffron testified he took several steps before and after conducting the intoxilyzer test: (1) completed the observation period and filled out the record; (2) purged the sample chamber; (3) took the reference sample; (4) purged the sample chamber a second time; (5) took the subject's breath sample; and (6) purged the sample chamber a third time. Saffron repeated these steps on cross-examination. Defense counsel then asked Saffron:

Q. Let me ask you this. Aside from what you've testified about, is there anything that you remember doing in this man's particular case? Like say you told us that you had a—you are—I assume you're telling us that you have a tendency to usually do those things, but you don't have a specific recollection?

A. Right.

**Technical Supervisor Max Courtney's testimony.**

Q [DEFENSE COUNSEL]. If the operator said the first thing that he did was he ran the air blank and then he ran the reference sample—He then ran anoth-

er air blank. He ran the reference and then he ran another air blank. Was that proper operator procedure?

A. No.

Q. Okay. And it's not in compliance with what the operator shows it to do?

A. No.

Q. What would you say about that test? If the operator, in fact, said that he did it that way, you'd say it doesn't sound like a valid test?

A. I would say the operator was wrong in his saying that he did it that way because he couldn't do it that way.

Q. So either the operator did it wrong or doesn't know what the proper procedure is?

A. If he did it—Well—That could be your conclusion. What you have said might have been said. It cannot be true.

Q. Okay. So if he says it's true, you know that something is wrong here? You know something is wrong in the procedure because it is not possible?

A. It's not possible to do it that way.

. . . .

Q. Is the operator supposed to check the reference sample device?

A. Yes.

Q. What's he supposed to do it with?

A. Supposed to check it for leaks and check the temperature.

Q. How does he check it for leaks?

A. They are supposed to blow—It has an outlet tube and an inlet tube. They're supposed to blow through the inlet tube and then alternately place the—

Q. I'm writing—Blow through the tube—And if he didn't do that—Could it look like a valid test if he didn't do that?

A. Yes.

Q. Is it a valid test?

A. No.

Q. You said something about checking the temperature of the reference sample device. Is that something they are supposed to do?

A. Yes.

Q. When he checks the temperature what is he supposed to check it for?

A. What temperature or conceptually?

Q. What temperature?

A. 34 degrees plus or minus 0.2 degrees centigrade.

Q. 34 degrees plus or minus .2 degrees? Okay. If he doesn't do that, would it look like a valid test?

A. Yes.

After Courtney finished testifying, the State recalled Saffron as a witness:

Q. Do you wish to change any of your testimony regarding that?

A. Yes. My testimony in that was incorrect. If you recall, I did originally state that the first purge was done and then the second sample was taken, and then I got Intoxilyzer 5000 on the brain and looked at this. And on the 5000 it's the other way. And I changed my testimony based on my recollection of the 5000 and looking at the—I didn't do anything to help you, did I?

We find this evidence raises a fact issue about whether Officer Saffron properly operated the reference sample device, checked the reference sample temperature, and maintained the breath tube inside the housing until the test.

Since Atkinson raised fact issues about all the matters in his requested instruction, we must review the charge actually given in this case to see if it included Atkinson's instruction. The pertinent portions of the charge are:

Our law provides that a person commits an offense if that person is intoxicated while driving or operating a motor vehicle in a public place.

(1) "Intoxicated" means:

A. Not having the normal use of mental or physical faculties by reason of the introduction of alcohol into his body; or

B. Having an alcohol concentration of 0.10 or more.

(2) "Alcohol concentration" means:

(a) the number of grams of alcohol per 100 milliliters of blood; or

(b) the number of grams of alcohol per 210 liters of breath; or

(c) the number of grams of alcohol per 67 milliliters of urine.

(3) "Public place" means any place to which the public or a substantial group of the public has access and includes, but is not limited to, streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

. . . .

Now if you find from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on or about the 14th day of May, 1989, the defendant, Michael Hughes Atkinson, while driving or operating a motor vehicle in a public place was intoxicated, to-wit:

That he did not have the normal use of his mental or physical faculties by reason of the introduction of alcohol into his body, or that he had an alcohol concentration of 0.10 or more, then you will find the defendant guilty as charged.

Unless you so find beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, "not guilty".

■ This charge does not encompass Atkinson's requested instruction. Further, in light of the testimony set out above, we find the trial court erred by refusing to include Atkinson's instruction in the jury charge. *See Smithey,* 850 S.W.2d at 210.

Arguing against inclusion of the instruction, the State relies on *Stone v. State,* 685 S.W.2d 791 (Tex.App.—Fort Worth 1985), *aff'd,* 703 S.W.2d 652 (Tex.Crim.App.1986). In that case, this court found the following instruction would constitute an impermissible comment on the weight of the evidence:

When a chemical test is given and testimony concerning the result of the test are [sic] admitted into evidence, you may disregard the results of said test if you entertain a reasonable doubt as to whether or not the chemical test instrument was in good operating condition on the date in

question, or to any question of accuracy of the test or the results thereof.

*Id.* at 792.

Our decision in *Stone* is distinguishable from the instant case. At Stone's trial, evidence was presented that the breath tube on the intoxilyzer used to test Stone had a small hole in it. The evidence also showed, however, that while the hole might cause a lower test result, it would not cause a higher one. No evidence was proffered that the conditions under which the test was conducted would produce a result that showed Stone's breath alcohol to be higher than it actually was. Thus, Stone did not show the testing conditions had the potential to make him appear intoxicated when he was not. We do not believe testing conditions that merely place a greater burden on the State to prove its case entitle the defendant to an instruction like the one requested in this case.

Moreover, the trial court in *Stone* charged the jury that the level of alcohol in the blood as shown by chemical analysis "merely raises a legal presumption that such person was *under the influence of intoxicating liquor.*" *Id.* at 792–93. The trial court's charge also tracked the language of TEX.PENAL CODE ANN. § 2.05 (Vernon Supp.1994):

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt; [and]

. . . .

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

*Id.; Stone,* 685 S.W.2d at 793. This court found the charge in *Stone* adequately protected Stone's rights. *Id.* No such instruction was given at Atkinson's trial, however.

Because the evidence presented in *Stone* proved only that the testing conditions were less likely to show Stone was intoxicated, and because the charge instructed the jury to presume Stone was intoxicated only if it found beyond a reasonable doubt the facts giving rise to the presumption, we are not persuaded by the State's reliance on that case.

The State also relies on *Ray v. State,* 749 S.W.2d 939, 943–44 (Tex.App.—San Antonio 1988, pet. ref'd). In *Ray,* the San Antonio Court of Appeals held an instruction requiring the jury to disregard intoxilyzer evidence unless it first found the test administrator had continuously observed the defendant for fifteen minutes would be an improper comment on the weight of the evidence. *Id.* at 943–44. We respectfully disagree with our sister court.

Having found the trial court erred by refusing to include the requested instruction in the jury charge, we must determine whether the error harmed Atkinson.

The charge authorized the jury to convict Atkinson of driving while intoxicated if it found that he was intoxicated either: (1) by not having the normal use of his mental or physical faculties by reason of introduction of alcohol into his body; or (2) because he had an alcohol concentration of 0.10 or more. Because we are unable to determine upon what theory Atkinson's conviction rests, we cannot determine beyond a reasonable doubt that the trial court's error did not contribute to Atkinson's conviction. TEX.R.APP.P. 81(b)(2); *Smithey,* 850 S.W.2d at 210; *Gifford,* 793 S.W.2d at 50. *See also Kirby v. State,* 713 S.W.2d 221, 222 (Tex.App.—El Paso 1986, no pet.).

■ The State urges us to apply *Aguirre v. State,* 732 S.W.2d 320 (Tex.Crim.App. [Panel Op.] 1987) (opinion on reh'g), in which the Court of Criminal Appeals ruled that where a general verdict is returned and the evidence is sufficient to support a finding under any of the counts submitted, the verdict will be applied to the offensive theory supported by the facts. *Id.* at 326. The *Aguirre* rule pertains to sufficiency of the evidence challenges, however, not to jury charge errors. Although the State makes a good argument, we decline to extend *Aguirre's* application to improper jury charges.

We sustain point of error one. In light of our holding on this point, we deem it unnecessary to consider Atkinson's remaining point of error. We reverse the trial court's

judgment and remand the cause for a new trial.