In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00229-CR


______________________________




JESSIE R. HALL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 28829-B




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Jessie R. Hall appeals his conviction by a jury for burglary of a habitation. The
indictment alleged two prior felony convictions for enhancement purposes. Hall pled true
to these allegations, and the jury assessed his punishment at confinement for life. Hall
brings one point of error, contending the trial court erred in denying his motion to suppress
eyewitness identification testimony given by the complaining witness. 

 On the night of September 3, 2001, Cindy Hugghins was awakened by her dog's
barking. While investigating the reason for the dog's barking, she found Hall in her
bathroom, near an open window. Hall informed her he had been chased by persons firing
shots and asked to use the telephone. Hugghins gave him a cellular telephone, went into
her bedroom where her eighteen-year-old daughter was sleeping, awoke her daughter, and
told her to dial 9-1-1. Hugghins then locked the bedroom door and activated the security
alarm. When the police arrived, they found Hugghins' front door unlocked, and Hall was
no longer on the premises. Hugghins later identified Hall in a photographic lineup, and he
was arrested September 6, 2001.

 We review a trial court's findings of fact on a motion to suppress identification
deferentially and in the light most favorable to the trial court's ruling. Loserth v. State, 963
S.W.2d 770, 773 (Tex. Crim. App. 1998). However, we review mixed questions of law and
fact de novo. Id. In Simmons v. United States, the United States Supreme Court
established a two-part test to be used in challenging a pretrial identification. 390 U.S. 377,
384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). The defendant must prove (1) the pretrial
identification was impermissibly suggestive, and (2) under the circumstances, the
impermissibly suggestive identification created a substantial likelihood of misidentification. 
Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). To determine the latter,
courts should consider as nonexclusive factors: 1) the opportunity of the witness to view
the criminal at the time of the crime, 2) the witness' degree of attention, 3) the accuracy of
his or her prior description of the criminal, 4) the level of certainty demonstrated at the
confrontation, and 5) the time between the crime and the confrontation. Manson v.
Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Webb, 760 S.W.2d
at 269. 

 Hall contends the pretrial identification procedure used in this case was
unnecessarily suggestive. He does not complain about the photographs included in the
array. Rather, he complains about the way the police displayed the array. His complaint
is that the police should have shown the photographs to Hugghins one at a time instead
of in a group where she could see all of them at once. Hall also contends the police should
have followed the recommendation made in a recent study that, before displaying
photographs to a witness, the police should ask the witness how confident she or he is
about being able to identify the perpetrator and tell the witness the perpetrator may not be
in the lineup. Eyewitness Evidence: A Guide for Law Enforcement (Oct. 1999)
<http://www.ncjrs.org/pdffiles1/nij/178240.pdf>. Hall cites no authority other than this study
for his contentions. 

 Nevertheless, Detective Robert Holcomb testified that, when he showed Hugghins
the lineup, he informed her the perpetrator may or may not have been among the
photographs. Holcomb also testified Hugghins indicated she would be able to identify the
perpetrator if she saw him again. As to the means of displaying the array of photographs,
it appears the police gave them to Hugghins in a group, not individually. Despite the
statements of the study on which Hall relies, he presents no evidence that Hugghins'
identification would have been different in any way had the lineup been presented
differently. The police presented Hugghins with the first lineup the day after the incident. 
She did not identify anyone in that lineup. Two days later, the police showed Hugghins a
second lineup. She immediately and unequivocally identified Hall. Hugghins also
positively identified Hall in the courtroom at trial. 

 Hall failed to show the pretrial identification was impermissibly suggestive. 

 We affirm the judgment.


 Donald R. Ross

 Justice


Date Submitted: July 31, 2002

Date Decided: August 8, 2002


Do Not Publish



ly: 'Times New Roman', serif">            The evidence shows that Howes was stopped by a local policeman, Fred Ellis, and his
partner, at about 11:00 p.m. in Gladewater, Texas. Ellis gave Howes various field sobriety tests and,
based on Howes' poor results, arrested him. The activities were videotaped by the officer's car-based
camera, and the videotape bears a date and time stamp. The officer testified that the camera's clock
had not been reset for daylight savings time and was therefore an hour off, showing times shortly
after 10:00 p.m., rather than the actual times of shortly after 11:00 p.m. According to that stamp,
the videotape taken from the officers' car shows Howes' car still on the side of the road (in front of
the police unit) at about 10:29 p.m.—meaning it was about 11:29 p.m. Officer Downs recorded their
arrival time at the Upshur County Sheriff's Department


 at 11:37 p.m. Downs testified that the
fifteen-minute observation period of Howes began on their arrival, and the intoxilyzer machine
recorded 11:53 p.m. as the time of Howes' first breath sample.
            Howes contends on appeal that the trial court erred by (1) overruling Howes' motion to
suppress the intoxilyzer test; (2) refusing during the guilt/innocence phase to submit a requested jury
instruction regarding the factual dispute about the timing of the intoxilyzer test; and (3) failing to
provide Howes with an additional peremptory challenge during voir dire. Howes also contends the
evidence was factually and legally insufficient to support his conviction, because the underlying
enhancements that are required to raise this offense to felony status were not adequately proven.
Motion to Suppress
            The first contention is based on the mismatch in times recorded for different events during
the evening. Howes argues that, since Officer Ellis did not begin transporting Howes to the station
until at least 11:29 p.m., he could not possibly have made the thirteen- to sixteen-mile drive in eight
minutes; thus, the observation period could not have been fifteen minutes long, and therefore the
court's decision to admit the testimony of the intoxilyzer test was an abuse of discretion.
            A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). The general
rule is that an appellate court should afford almost total deference to a trial court's determination of
the historical facts supported by the record, especially when the trial court's fact-findings are based
on an evaluation of credibility and demeanor. Id. At a suppression hearing, the trial court is the
exclusive trier of fact and judge of the credibility of the witnesses. Guzman v. State, 955 S.W.2d 85,
89 (Tex. Crim. App. 1997). We are also to afford such deference to a trial court's ruling on
"application of law to fact questions," also known as "mixed questions of law and fact," if the
resolution of those questions turns on an evaluation of credibility and demeanor. Villarreal, 935
S.W.2d at 138.
            Howes suggests that any reasonable fact-finder should be able to apply high school physics
to calculate the reasonably possible speed of the vehicle. Applying the numbers as Howes sets them
out would result in a very difficult, if not impossible, speed by the arresting officers in transporting
Howes to have his breath analyzed. Thus, reasons Howes, he must have arrived later than shown
by the documents, and he could not have been observed for fifteen minutes before taking the
intoxilyzer test—as shown by the time stamp produced by that machine.
            There is a fatal flaw in this logic. There is nothing to indicate that the time stamp generated
by the video camera was synchronized with the internal clock in the intoxilyzer machine, nor is there
anything to indicate the source from which officers determined the stated time of arrival at the
station. Thus, we cannot state with any degree of certainty that the figures suggested by Howes are
correct, and it is quite clear that a difference of just a few minutes completely dispatches his theory. 
It is reasonable for the trial court to recognize this flaw and to have made its decision accordingly. 
Thus, we cannot find that the trial court abused its discretion by denying the motion to suppress.
Requested Jury Instruction
            Howes next contends the court erred by denying his request to instruct the jury that, under
Tex. Code Crim. Proc. Ann art. 38.23(a) (Vernon Supp. 2004), evidence obtained by an officer in
violation of the Constitution should not be considered by the jury. A trial court is required to include
an Article 38.23 instruction in the jury charge if there is a factual dispute as to how the evidence was
obtained. Balentine v. State, 71 S.W.3d 763, 773 (Tex. Crim. App. 2002). If a defendant
successfully raises a factual dispute over whether evidence was illegally obtained, inclusion of a
properly worded Article 38.23 instruction is mandatory. Bell v. State, 938 S.W.2d 35, 48 (Tex.
Crim. App. 1996); Hanks v. State, 104 S.W.3d 695, 700 (Tex. App.‒El Paso 2003, no pet. h.). In
his objection to the charge, counsel argued that, because there was evidence from which a jury might
determine that one of the officers was lying about the observation time period, the Article 38.23
instruction should be given to the jury. The trial court overruled the objection.
            To be admissible, a breath test analysis must be performed according to the rules of the Texas
Department of Public Safety (DPS). Tex. Transp. Code Ann. § 724.016 (Vernon 1999); Atkinson
v. State, 923 S.W.2d 21, 23 (Tex. Crim. App. 1996). Rules adopted by the DPS include the
requirement that a technician continuously observe the person tested for at least fifteen minutes
before administering the test. 37 Tex. Admin. Code § 19.3(c)(1) (last amended 1998) (Tex. Dep't
Pub. Safety). Where there is a fact issue raised with respect to this requirement, a defendant is
entitled to an instruction that the jury disregard the test if it believes or has a reasonable doubt as to
whether the fifteen-minute observation requirement was complied with. See Adams v. State, 67
S.W.3d 450, 453 (Tex. App.‒Fort Worth 2002, pet. ref'd); Atkinson v. State, 871 S.W.2d 252, 256
(Tex. App.‒Fort Worth 1994), rev'd on other grounds, 923 S.W.2d 21 (Tex. Crim. App. 1996).
            The State does not argue that the instruction should not have been given. It is apparent from
our previous discussion of this matter that there was a disagreement about whether the evidence
showed that the fifteen-minute observation period had occurred, and therefore there was some
question about whether the correct procedures were followed by the officers in testing Howes' breath
with the intoxilyzer.
            The trial court erred by refusing to submit the instruction to the jury. This error requires
reversal if Howes suffered "some harm" from the omission. See Ovalle v. State, 13 S.W.3d 774,
787-88 (Tex. Crim. App. 2000) (defendant does not have burden of proof; "actual harm" not
required);  Atkinson,  923  S.W.2d  at  27  (Article  36.19  harm  standard  applies  in  cases  where
Article 38.23 instruction erroneously omitted, in case also involving fifteen-minute observation
required before administration of intoxilyzer test); Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1984) (op. on reh'g) (construing Article 36.19);


 Atkinson v. State, 934 S.W.2d 896, 897
(Tex. App.‒Fort Worth 1996, no pet.).
            The officer who administered the intoxilyzer test testified about the machine, the way in
which he conducted the tests, and that Howes showed a blood-alcohol level of .154 and .156 in two
consecutive tests. But here, the contested evidence (the intoxilyzer result) was not the sole evidence
supporting the verdict. Officer Ellis testified that he stopped Howes because Howes had pulled away
from a traffic light fast enough to squeal his tires. He testified that Howes' vehicle smelled of
alcohol and that Howes' eyes were bloodshot. He then asked Howes if he had been drinking, and
Howes admitted to having consumed three beers. The officer then administered a horizontal gaze
nystagmus test, a nine-step walk and turn test, and a one-legged stand test. The jury observed the
patrol car's videotape of the stop and Howes' performance of the tests. The arresting officer testified
that, based on the results of these test and Howes' behavior and appearance—all depicted on the
videotape—and based on the officer's experience, he believed Howes was intoxicated.
            The clock in the patrol car's video equipment had obviously not been reset at the onset of
daylight savings time. There is no evidence of the last time it was set or checked, nor any evidence
that it was synchronized with the internal clock in the intoxilyzer machine. The testimony was that
Howes was observed for the full fifteen-minute period before the intoxilyzer test was administered.
            The question is whether Howes suffered "some harm" as a result of the court's error in failing
to instruct the jury on the factual dispute regarding the time. We conclude Howes suffered no harm
and overrule this contention of error.
Additional Peremptory Challenge
            Howes argues that the trial court erred by denying his request for an additional peremptory
challenge. Under a fair reading of his discussion, however, he actually contends the trial court erred
by denying his challenge of a juror for cause, after Howes had exhausted his peremptory challenges.
            To preserve error with respect to a trial court's denial of a challenge for cause, an appellant
must: (1) assert a clear and specific challenge for cause, (2) use a peremptory strike on the
complained-of veniremember, (3) exhaust his peremptory strikes, (4) request additional peremptory
strikes, (5) identify an objectionable juror, and (6) claim that he would have struck the objectionable
juror with a peremptory strike if he had had one to use. Allen v. State, 108 S.W.3d 281, 282 (Tex.
Crim. App. 2003); Nelson v. State, 848 S.W.2d 126, 134 (Tex. Crim. App. 1992).  
            The juror about whom Howes complains is panelist number 38, Marilyn Mackey. During
voir dire, counsel asked that Mackey be struck for cause. Counsel based his request on her answers,
which counsel interprets as stating that a person should not drink and drive, that she gets intoxicated
with only one drink, that either side would have to prove the accused was not intoxicated, and that
she would probably favor the State's side in determining whether a defendant was intoxicated.             When reviewing a trial court's decision to grant or deny a challenge for cause, we are to look
at the entire record to determine if there is sufficient evidence to support the court's ruling. Patrick
v. State, 906 S.W.2d 481, 488 (Tex. Crim. App. 1995). In our review, we give great deference to
the trial court's decision because the trial court observes the demeanor of the venireperson and 
listens to his or her tone of voice. Id. We have been directed to give particular deference when the
potential juror's answers are vacillating, unclear, or contradictory. Feldman v. State, 71 S.W.3d 738
(Tex. Crim. App. 2002); King v. State, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000). In our review,
we look to see if the trial court abused its discretion in denying appellant's challenges for cause.
Murphy v. State, No. 74145, 2003 WL 21461680, at *6 (Tex. Crim. App. June 25, 2003).
            In this case, the juror was questioned by counsel for both sides. She responded with answers
that did not reflect an accurate understanding of what was expected of her. In her answers to
individual questions, however, she agreed the State had the burden of proof, she would not hold the
State to a lighter burden than required, and it would not be enough that Howes had merely drunk
alcohol and operated the vehicle—he must be intoxicated under the law. She went on to reply to
defense counsel's later question that she would "more than likely" tend to favor the State if she heard
some evidence that Howes was intoxicated and some evidence that he was not. The State suggested
to the trial court that this was merely her response to a credibility question, and the court declined
to allow the State to bring any follow-up questions on that matter.
            Here, we have some conflict in the answers of the veniremember to the questions propounded
by counsel. There are responses that support the trial court's ruling and responses which cut against
its ruling. In such a situation, we must defer to the decision of the trial court. We find the trial court
did not err by refusing to strike Mackey for cause, and therefore we overrule this contention of error.
Sufficiency of Evidence
            Howes contends the evidence is factually and legally insufficient to support his conviction. 
In our review of the legal sufficiency of the evidence, we view the relevant evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000). In reviewing for factual sufficiency, we view the evidence in a neutral light,
favoring neither party. Id. at 7. We set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Id.
            Howes contends the evidence is insufficient because the State failed to prove the existence
of two prior alcohol-related offenses that had occurred within the preceding ten-year period. He
relies on Tex. Pen. Code Ann. §§ 49.09(b)(2), 49.09(e) (Vernon Supp. 2004), as support for his
position. Howes argues that the prior DWI convictions already used to enhance one of his 
convictions cannot again be used to enhance the present prosecution to a felony. He takes the
position that this constitutes a form of bootstrapping that should not be allowed, and also directs the
Court to Maibauer v. State, 968 S.W.2d 502, 504 (Tex. App.‒Waco 1998, pet. ref'd), as further
support for his position.
            We have reviewed Section 49.09. It contains no language that supports Howes' position. 
The Maibauer opinion also does not address the matter raised in Howes' brief. It applies the
language of the statute, affirming that the State may not use the same prior DWI conviction under
both the general enhancement provisions and under Section 49.09 to elevate the offense to a felony. 
Howes asks this Court to take a step beyond that requirement and require that the prior offenses have
not been used for that purpose in earlier prosecutions on other DWI offenses. The statute does not
require such. In fact, the Texas Penal Code specifically states, "The use of a conviction for
enhancement purposes shall not preclude the subsequent use of such conviction for enhancement
purposes." Tex. Pen. Code Ann. § 12.46 (Vernon 2003). 
            Because this is the sole basis for Howes' argument that the evidence is insufficient, our
resolution of this issue also disposes of his evidentiary arguments. We overrule this contention of
error.
            We affirm the judgment.
 
                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          October 28, 2003
Date Decided:             November 7, 2003

Publish